# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KJ KOREA, INC., d/b/a HEALTH KOREA, and YOUNG KI EUN, individually,<br><br>Plaintiffs,<br><br>v.<br><br>HEALTH KOREA, INC., and KAY PARK, individually,<br><br>Defendants. | CASE NO.: 13 CV 6902<br><br>Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiffs KJ Korea, Inc. ("KJ Korea") and Young Ki Eun filed their complaint against Defendants Health Korea, Inc. ("Health Korea") and Kay Park, alleging Trademark Infringement (Count I) and Unfair Competition (Count II) under the Lanham Act; Unfair Competition in violation of Illinois's Uniform Deceptive Trade Practices Act (Count III); Unfair Competition in violation of Illinois's Consumer Fraud and Deceptive Business Practices Act (Count IV); Common Law Trademark Infringement (Count V); Common Law Unfair Competition (Count VI); and Unjust Enrichment (Count VII). Defendants move for dismissal under Federal Rule of Civil Procedure 12(b)(6) on all counts. For the reasons stated below, the Court denies Defendants' motion to dismiss [16] in its entirety.

## I. Background[1]

---

[1] For the purposes of Defendant's motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the amended complaint. See *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

1

The complaint alleges that, since 2008, Plaintiffs have sold nutritional supplements, massage instruments, and other health products in association with three marks, all of which read "Health Korea" in Korean or both Korean and English. See Compl. at ¶ 15. [2]

Plaintiffs allege that they own the first mark, "헬스 코리아," under the Lanham Act. Compl. at ¶¶ 13, 15; Exh. A. This mark is registered in the Supplemental Register of the U.S. Patent and Trademark Office ("U.S.P.T.O") with a Registration Number of 3,968,033 (hereafter "the '033 Mark"). Compl. at ¶¶ 13, 15; Compl. Exh. A.

The complaint alleges that Plaintiffs own the second mark, "HEALTH KOREA," under Illinois common law. Compl. at ¶ 15. This mark has no pending application or registration with the U.S. P.T.O. See *id*.

The complaint further alleges that Plaintiffs own the third mark, 헬스코리아 HEALTH KOREA, under Illinois common law. *Id*. at ¶¶ 14, 15. This mark is allegedly in the application stage before the U.S. P.T.O. with a Serial Number 86040691 (hereafter, the "'691 Mark"). *Id.*

Plaintiffs allege that, since 2008, they have sold goods and services, including massage apparatuses and nutritional supplements, in association with the three marks in California, where they now own four retail stores. *Id.* at ¶ 16. Plaintiffs allege that, since May 2009, they have spent more than one million dollars advertising these goods and services in association with their three marks in Chicago and nationwide through various television channels, including but not limited to The Asia Network, Inc., SBS International, and Television Korea 24, Inc. *Id*. at ¶¶ 17-

---

[2] At times Defendants characterize Plaintiffs' claims as involving two marks rather than three; the complaint alleges three so the Court assumes for purposes of this opinion that there are three marks at issue.

18. According to the complaint, plaintiffs have sold and shipped goods, including massagers and nutritional supplements, with these three marks to various retailers and distributors in Chicago since at least as early as November 2011. *Id.* at ¶ 19. They allege that, as a result of five continuous years of advertising, sales and promotions of goods and services associated with the three marks, all three marks have acquired secondary meaning in the United States. *Id.* at ¶ 20.

Plaintiffs allege that Defendants have knowingly violated Plaintiffs' rights to the three marks in two ways. First, they have allegedly operated a retail store named and labeled ![Health Korea logo] in Chicago since 2013. *Id.* at ¶ 36. Second, Defendants have allegedly published newspaper advertisements displaying the English words "HEALTH KOREA." *Id.* at ¶ 37.

Plaintiffs allege that, prior to opening the store in Cook County, Defendant Kay Park visited two of KJ Korea's retail stores in Los Angeles. *Id.* at ¶¶ 27-28. While in the stores, she allegedly observed Plaintiffs' three marks in connection with massagers and nutritional supplements as well as the store layout, the display and merchandise arrangement, and the store ambiance. *Id*. During subsequent conversations between Defendant Kay Park and KJ Korea's marketing director, Defendant Kay Park allegedly stated that she had learned of "HEALTH KOREA" through televised advertisements on SBS in Chicago and that her research showed that the mark "HEALTH KOREA" was well recognized and popular in the Korean community. *Id.* at ¶¶ 30-31. According to Plaintiffs, she stated that any products and services bearing the "HEALTH KOREA" trademark/service mark would be successful and stated that she therefore intended to use the mark in her new store. *Id.*

The complaint alleges that KJ Korea's marketing director "clearly told Defendant Kay Park that she cannot use the trademark 'HEALTH KOREA' in any form" and that the '033 Mark was federally registered trademark. *Id.* at ¶ 32. Plaintiffs further allege that the marketing director sent an e-mail to the same effect on July 29, 2013. *Id.* On August 14, 2013, Defendant Kay Park allegedly replied to the e-mail, stating that she nevertheless intended to name her new business "HEALTH KOREA" and that she would not remove the storefront sign marked with this same name. *Id.* at ¶ 34. Plaintiffs allege that the marketing director replied via e-mail that same day, again stating that Defendant Kay Park "cannot use 'HEALTH KOREA'" and requesting that she "not open the new retail store using the mark 'HEALTH KOREA.'" *Id.* at ¶ 35.

Plaintiffs allege that their attorney sent a letter demanding that Defendants cease and desist from using infringing marks that would likely cause confusion with Plaintiffs' registered '033 Mark and its common law trademarks. *Id.* at ¶ 37. They allege that Defendants ignored the letter, that they continue to use at least one infringing mark with full knowledge of Plaintiffs' federal and common law rights, and that they are knowingly and intentionally trading on Plaintiffs' goodwill and reputation. *Id.* at ¶¶ 39- 40.

The complaint further states that Plaintiffs "have evidence of actual confusion since the Defendants' use of allegedly infringing marks." *Id.* at ¶ 41. The complaint itself does not, however, include this evidence. Plaintiffs additionally allege that they have and will continue to suffer damages given Defendants' intent to continue the infringing acts. *Id.* at ¶¶ 43-46.

Plaintiffs claim that these activities violate their rights to the three marks under the Lanham Act, state unfair competition statutes, and Illinois common law. Specifically, Plaintiffs claim Trademark Infringement under 15 U.S.C. § 1114 (Count I); Unfair Competition under 15

U.S.C. § 1125 (Count II); Unfair Competition in violation of Illinois's Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1 (Count III); Unfair Competition in violation of Illinois's Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 (Count IV); Common Law Trademark Infringement (Count V); Common Law Unfair Competition (Count VI); and Unjust Enrichment (Count VII). Defendants move to dismiss Plaintiffs' complaint under Federal Rule of Civil Procedure Rule 12(b)(6).

## II. Legal Standard On Motion To Dismiss

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the

5

grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

III. **Analysis**

Each of the claims at issue in this motion involves the same elements and proofs. See *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 619 (7th Cir. 1993) (holding that the elements of a state unfair competition claim mirror those of federal statutory trademark infringement); *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994) (citing *Gimix, Inc. v. JS & A Group, Inc.,* 699 F.2d 901, 908 (7th Cir. 1983) (holding that "[c]laims for unfair competition and deceptive business practices [involving trade names] brought under Illinois statutes are to be resolved according to the principles set forth under the Lanham Act," and noting that "Illinois courts look to federal case law and apply the same analysis to state infringement claims," including claims of unfair competition under Illinois common law); *Trans Union LLC v. Credit Research, Inc.* 142 F.Supp.2d 1029, 1038 (N.D. Ill. 2001) (citing *AHP Subsidiary Holding Co.,* 1 F.3d at 619) (interpreting claims of trademark infringement under 15 U.S.C. § 1114, unfair competition under 15 U.S.C. § 1125, unfair trade practices under the Illinois Uniform Deceptive Trade Practice Act and Illinois Consumer Fraud and Deceptive Business Practices Act, as well as trademark infringement and unfair competition claims under Illinois common law to involve the same elements). Because the unjust enrichment claim is based on trademark infringement, the Court evaluates this claim under the same standard.

To state a claim for trademark infringement and unfair competition under all of these theories, a plaintiff must allege that: (1) it has a protectable right in the asserted trademarks; and (2) the defendant's use of the mark is likely to cause confusion. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 673-74 (7th Cir. 2001); *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 638 n.8 (7th Cir. 2001).

Defendants agree that these elements apply to all claims except a claim of common law unfair competition (Count VI). Defs.' Mot. to Dismiss at 6. Specifically, Defendants argue that under *Wilson v. Electro Marine Systems, Inc.*, 915 F.2d 1110 (7th Cir. 1990), "the common law of unfair competition is 'elusive', its elements 'escaping definition,'" and that unfair competition covers "conduct that 'shocks judicial sensibilities' and 'violates standards of commercial morality.'" *Id.* (citing *Wilson* 915 F.2d at 1118).

*Wilson* explains that "[u]nfair competition originally was an extension of trademark law, and was limited to circumstances in which a competitor was 'passing off' or 'palming off' the product of another as his own." *Wilson*, 915 F.2d at 1118. In *International News Service v. Associated Press,* the Supreme Court "expanded the parameters of unfair competition beyond 'palming off' by refusing to 'concede that the right of equitable relief is confined to that class of cases.'" *Id.* (citing 248 U.S. 215, 241-42 (1918)). *Wilson* noted that, as the body of case law expanded, the elements of *non-trademark* related unfair competition remained "elusive." *Id.* In language that Defendants cite, the Seventh Circuit noted that, "[n]evertheless, a body of law has evolved around the theory that at times business competitors engage in activity which, while perhaps not actionable under other commercial tort theories, so 'shock[s] judicial sensibilities' or violates 'standards of commercial morality' that it cannot be tolerated." *Id.* citing (*Margarete Steiff, Inc. v. Bing*, 215 F. 204 (D.N.Y. 1914); *People ex rel. Mosk v. Nat'l Research Co.,* 201

7

Cal. App. 2d 765, (3d Dist. 1962)). Given that the theory of unfair competition before it was not trademark-related, the Seventh Circuit in *Wilson* evaluated the claim keeping this and a variety of other "admittedly subjective standards [from the Supreme Court, the Second Circuit and New York state courts] in mind." *Id.* at 1119.

The Court disagrees that the standard for Plaintiffs' common law trademark-related unfair competition claim is whether the Defendants' activity "shocks judicial sensibilities" or "violates standards of commercial morality." First, both the Seventh Circuit and the Northern District of Illinois have interpreted claims of unfair competition brought under a trademark infringement theory to include the same elements of trademark infringement itself. See *Gimix, Inc.* 699 F.2d at 901; *AHP Subsidiary Holding Co.*, 1 F.3d at 619; *Spex, Inc.*, 847 F. Supp. at 579; and *Trans Union LLC*, 142 F.Supp.2d at 1038; see also *Thompson v. Spring-Green Lawn Care Corp.*, 126 Ill. App. 3d 99, 113 (Ill. App. Ct. 1984) (noting that "the same set of facts and circumstances may be used to support a claim for both trademark infringement and unfair competition, and a finding in favor of the former claim typically results in a finding for the latter"). Second, *Wilson* is inapposite; to the extent that it even applied this standard, it did so in the context of an unfair competition claim that was unrelated to trademark infringement—the traditional focus of unfair competition law.

Defendants' arguments for dismissal fall within three general categories. They argue, first, that Plaintiffs lack a protectable right in the asserted trademarks; second, that Defendants' marks are unlikely to cause confusion with Plaintiffs' marks; and, third, that Defendants should prevail under a fair use defense. None of these arguments prevail at this stage of the litigation.

    **A.**    **Protectable Right**

A plaintiff can allege that its mark is protectable in several ways. First, it can allege that the mark is registered in the U.S. P.T.O.'s Principal Register. Registration of a mark in the Principal Register is "prima facie evidence of the validity of the registered mark[s] * * *, of the owner's ownership of the mark[s], and of the owner's exclusive right to use the registered mark[s] in commerce on or in connection with the goods * * * specified in the certificate * * *." 15 U.S.C. § 1057(b).

By contrast, a mark registered in the Supplemental Register is not entitled to this presumption of validity because it is only "capable" of becoming a trademark. 15 U.S.C. § 1094. Similarly, where a mark is unregistered with the U.S.P.T.O, "the burden is on the claimant * * * to establish that it is entitled to protection under § 43(a) of the Lanham Act." *Platinum Home Mortg. Corp. v. Platinum Fin. Group, Inc.*, 149 F.3d 722, 727 (7th Cir. 1998) (citing *Mil–Mar Shoe Co., Inc. v. Shonac Corp.,* 75 F.3d 1153, 1156 (7th Cir. 1996)).

Where a mark is registered in the Supplemental Register or is unregistered, a Plaintiff may state a claim for trademark infringement and unfair competition by showing that the mark is protectable based on the degree of its distinctiveness. The level of trademark protection available generally corresponds to the distinctiveness of the mark. *Platinum Home Mortg. Corp.*, 149 F.3d at 727 (7th Cir. 1998) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767-68 (1992).

Marks are classified into five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. *Platinum Home Mortg. Corp.*, 149 F.3d at 727 (citing *Two Pesos, Inc.* 505 U.S. at 767-68). A generic term is "one that is commonly used and does not identify any particular source and, therefore, is not entitled to any trademark protection." *Id.* (citing *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934,

936 (7th Cir.1986). A descriptive mark "'describes the ingredients, qualities, or characteristics of an article of trade or a service.'" *Id.* (citing *Liquid Controls Corp.* 802 F.2d at 936 (quoting *M.B.H. Enters. v. WOKY, Inc.*, 633 F.2d 50, 54 (7th Cir. 1980))). Generally, "it is not protected as a trademark because a merely descriptive mark is a poor means of distinguishing one source of services from another.'" *Id.* (citations and quotations omitted).

A descriptive mark may, however, receive trademark protection if it acquires "secondary meaning in the collective consciousness of the relevant community." *Id.* (citations and quotations omitted). Secondary meaning is "a *mental association* in buyers' minds between the alleged mark and a single source of the product." *Packman*, 267 F.3d at 641. It exists when a mark "has been used so long and so exclusively by one company in association with its goods or services that the word or phrase has come to mean that those goods or services are the company's trademark." *Id.* Secondary meaning can be established through "direct consumer testimony, consumer surveys, length and manner of use, amount and manner of advertising, volume of sales, place in the market, and evidence of intentional copying." *Id.* (citation omitted).

Finally, suggestive, arbitrary, or fanciful marks are "automatically entitled to trademark protection because they are inherently distinctive." *Id.* (citing *Two Pesos*, 505 U.S. at 767–68).

Defendants seek dismissal by arguing that Plaintiffs' marks are merely descriptive. In arguing that the '033 Mark is not protectable, for example, Defendants contend that "[t]he words health and Korea merely describe the quality of the goods being sold by Plaintiffs * * * * [and] it would be unfair for Plaintiffs to be awarded exclusive use of health and Korea to describe the goods they are selling to the exclusion of all other business that likewise seek to sell Korean health related products and supplements." Defs.' Mot. to Dismiss at 4. Defendants additionally argue that Plaintiffs' allegations "do not establish any secondary meaning." *Id.* at 6.

Plaintiffs' allegations regarding protectability are sufficient to survive Defendants' motion to dismiss. The complaint expressly alleges that its marks have developed secondary meaning. Compl. at ¶ 20. Its relevant factual allegations fall under two of the seven ways of demonstrating secondary meaning listed above. See *Packman*, 267 F.3d at 641.

First, the complaint addresses the amount and manner of advertising; it alleges that, over the last five years, the three marks have acquired secondary meaning through the promotion and sale of associated goods and services nationwide and through advertisements online and on at least three Korean television channels, which have cost over one million dollars. Compl. at ¶¶ 18, 20. Second, the complaint also alleges intentional copying; it states that Defendant Kay Park told KJ Korea's marketing director that she had learned of "'HEALTH KOREA' through televised advertisements on SBS in Chicago, that her research showed that the mark "HEALTH KOREA" was well recognized and popular in the Korean community, that she believed any products and services bearing the "HEALTH KOREA" trademark/service mark would be successful, and that she therefore intended to use the mark in her new store. *Id.* at ¶¶ 30-31.

These allegations regarding protectability provide "fair notice of what the * * * claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). They are also sufficient to raise the possibility of relief above the "speculative level," assuming they are true. *E.E.O.C.*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 555). To the extent that Defendants argue that these allegations are insufficient to establish protectability, their argument is premature and more appropriate to a motion for summary judgment.

    **B.**    **Likelihood of Causing Confusion**

Courts in the Seventh Circuit analyze the likelihood of confusion under a seven-factor test: "(1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of the plaintiff's mark; (6) actual confusion; and (7) intent of the defendant to "palm off" his product as that of another." *Packman*, 267 F.3d at 643. "No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented, although, in many cases, the similarity of the marks, the defendant's intent, and actual confusion are particularly important." *Id.*

The complaint includes facts relating to all but the fourth factor. Viewed together, these factual allegations are sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C.*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 555). With respect to the first factor—similarity between marks—the complaint contends that two of Plaintiffs' three marks and both of Defendants' allegedly infringing marks include the English words "Health Korea." Compl. at ¶¶ 14, 36, 37. The complaint also alleges that the English translation of the '033 Mark is "Health Korea." Compl. at ¶ 9. In other words, it alleges that Plaintiffs' and Defendants' marks all share the same meaning (if not somewhat identical appearance).

Defendants argue that the marks are not similar because the '033 Mark is exclusively in Korean, while Defendants' allegedly infringing marks are only in English. However, courts compare marks "in light of what happens in the marketplace, not merely by looking at the two marks side-by-side." *Id.*; *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 898 (7th Cir. 2001) (internal citations and quotations omitted). Although Defendants' argument may have merit in a future phase of litigation, this argument does not warrant dismissal under Rule 12(b)(6). The factual allegations in the complaint analyzed above under the first factor are sufficient to raise the

12

possibility of relief above the "speculative level." *E.E.O.C.*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 555).

In examining the second factor—similarity between the products—courts ask "whether the products are the kind the public attributes to a single source." *Ty, Inc.*, 237 F.3d at 899. The complaint addresses this factor by alleging that both Plaintiffs and Defendants produce nutritional supplements, massage apparatuses, and health food products in association with their respective marks. Compl. at ¶¶ 12, 19, 26, 50.

Under the third factor—area and manner of concurrent use—courts assess "whether there is a relationship in use, promotion, distribution, or sales between the goods or services of the parties." *Ty, Inc.*, 237 F.3d at 900 (internal citations and quotation marks omitted). Courts may consider "the relative geographical distribution areas * * * whether there exists evidence of direct competition between the products * * * whether the products are sold to consumers in the same type of store * * * whether the products are sold in the similar section of a particular store * * * and whether the product is sold through the same marketing channels." *Id.*

The complaint addresses this factor by alleging that both Plaintiffs and Defendants sell their products, including nutritional supplements, in the Chicagoland area. Specifically, it alleges that Plaintiffs have advertised their products nationwide, including in Chicago, through several Korean television stations and online. Compl. at ¶ 17. It also alleges that Plaintiffs have sold and shipped goods, including nutritional products, to retailers and distributors in Chicago since at least as early as November 2011. Compl. at ¶ 19. Lastly, it alleges that Defendants have operated a retail store selling similar nutritional products in Chicago since August 2013. Compl. at ¶¶ 26, 36, 37, 40.

In evaluating the fifth factor—strength of the plaintiff's mark—courts examine "the distinctiveness of the mark, or more precisely, its tendency to identify the goods sold under the mark as emanating from a particular * * * source." *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 464 (7th Cir. 2000). "Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, this evidence is not required to prove that a likelihood of confusion exists." *CAE, Inc.*, 267 F.3d at 685 (citations omitted). Plaintiffs allege that, over the last five years, their marks have acquired secondary meaning through the promotion and sale of associated goods and services nationwide and through more than one million dollars-worth of advertisements—an allegation that suggests an increasingly strong mark. Compl. at ¶¶ 18, 20.

Under the sixth factor—actual confusion—courts look to "the confusion of reasonable and prudent consumers, and not confusion among sophisticated members of * * * industry." *Platinum Home Mortgage Corp.*, 149 F.3d at 729. The complaint alleges that Plaintiffs "have evidence of actual confusion" without providing any specific facts. Defendants emphasize this lack of specific facts showing actual consumer confusion in arguing for dismissal. However, the absence of factual allegations demonstrating actual confusion is not dispositive of the likelihood of confusion. *Packman*, 267 F.3d at 643 ("No single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented"); *CAE, Inc.*, 267 F.3d at 685 ("Although evidence of actual confusion, if available, is entitled to substantial weight in the likelihood of confusion analysis, * * * this evidence is not required to prove that a likelihood of confusion exists") (citations omitted). Moreover, in a complaint, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the

14

grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citing *Twombly*, 550 U.S. at 555) (ellipsis in original).

Under the seventh factor—intent of the defendant to "palm off" his product as that of another—courts "look[] primarily for evidence that the defendants are attempting to 'pass off' their products as having come from the plaintiff." *Packman*, 267 F.3d at 644. Plaintiffs allege that Defendant Kay Park told KJ Korea's marketing director that she had learned of "'HEALTH KOREA' through televised advertisements on SBS in Chicago, that her research showed that the mark "HEALTH KOREA" was well recognized and popular in the Korean community, that she believed any products and services bearing the "HEALTH KOREA" trademark/service mark would be successful, and that she therefore used the mark in her new store, despite Plaintiffs' multiple objections. *Id.* at ¶¶ 30-31.

Defendants additionally argue that confusion is unlikely because the parties have distinct markets, product lines, and advertising channels. First, Defendants argue that, aside from nutritional supplements, the parties' product lines are generally distinct; they argue that the complaint does not allege that Defendants sell "the exact same goods and services as Plaintiffs." Defendants misconstrue this aspect of the likelihood of confusion test. Plaintiffs need not allege that both businesses sell identical goods and services. They need only allege that the commonly sold products are similar enough that "the public attributes [these products] to the same source." *Ty, Inc.*, 237 F.3d at 899.

Second, the motion to dismiss contends that Plaintiffs' and Defendants' markets are distinct; Plaintiffs' stores are located in California while Defendants' store is located in Chicagoland. This argument ignores Plaintiffs' allegations that they advertise nationwide and ship their products to Chicago. To the extent that Defendants argue that Plaintiffs' presence in

the Chicago market is insufficient to make confusion likely, their argument goes to the sufficiency of the proof rather than the sufficiency of the pleading and is better suited to a motion for summary judgment.

Lastly, Defendants seek dismissal by arguing that Plaintiffs fail to allege that Defendants have sold products bearing Plaintiffs' marks. Rather, Plaintiffs allege that Defendants' store name and label allegedly infringes Plaintiffs' marks.

Defendants cite no case law in emphasizing the distinction between marking a store name as opposed to products. Moreover, this argument ignores fundamental principles underlying trademark law, which the Seventh Circuit characterizes as follows:

> Trademarks help consumers to select goods. By identifying the source of the goods, they convey valuable information to consumers at lower costs. Easily identified trademarks reduce the costs consumers incur in searching for what they desire, and the lower the costs of search the more competitive the market. A trademark also may induce the supplier of goods to make higher quality products and to adhere to a consistent level of quality. The trademark is a valuable asset, part of the "goodwill" of a business. If the seller provides an inconsistent level of quality, or reduces quality below what consumers expect from earlier experience, that reduces the value of the trademark. The value of a trademark is in a sense a "hostage" of consumers; if the seller disappoints the consumers, they respond by devaluing the trademark. The existence of this hostage gives the seller another incentive to afford consumers the quality of goods they prefer and expect.

*Scandia Down Corp. v. Euroquilt, Inc.,* 772 F.2d 1423, 1429-30 (7th Cir. 1985) (footnote omitted).

In other words, the likelihood of confusion test focuses not on whether the parties sell products bearing the same mark, but whether the parties' use of those marks will confuse consumers as to the *source* of goods and services. Trademark law aims to avoid confusion regarding source because it would increase consumers' search costs, reducing market demand, and disincentivize suppliers from investing in quality, creating a less competitive market. An infringing mark on store signage or in newspaper advertisements could create just as much

consumer confusion as an infringing mark physically imprinted on a product itself. Accordingly, this distinction does not justify dismissal.

### c. Fair Use Defense

Defendants argue for the first time in their reply brief that they should prevail under a fair use defense. "[A] plaintiff is not required to negate an affirmative defense in his complaint." *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993) (citing *Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). Accordingly, the Court declines to dismiss the complaint on fair use grounds.

### III. Conclusion

For the foregoing reasons, the Court denies Defendants' motion to dismiss all counts [16].

Dated: September 2, 2014

_____
Robert M. Dow, Jr.
United States District Judge